**George W. COOPER, III, Administrator of the Estate of Barry Wesley Cooper, Plaintiff-Appellant,**

v.

**W. R. QUEEN, Defendant-Appellee.**

Court of Appeals of Tennessee, Middle Section.

March 30, 1979.

Rehearing Denied June 29, 1979.

Certiorari Denied by Supreme Court Aug. 27, 1979.

Jordan Stokes, III, Nashville, for plaintiff-appellant.

Don R. Binkley, Gracey, Maddin, Cowan & Bird, Nashville, for defendant-appellee.

## OPINION

LEWIS, Judge.

This appeal arises from the dismissal of plaintiff's suit against W. R. Queen. Defendant moved for a dismissal of the complaint against him on the ground that under the provisions of T.C.A. § 50–908, the rights and remedies granted by the Tennessee Workmen's Compensation Law on account of personal injuries or death by accident are exclusive of all other remedies, including suits at common law.

In his Complaint, plaintiff alleges:

1. Twenty-one year old Barry Wesley Cooper died while employed and on the job for Queen's Tree Surgery, Inc.;

2. W. R. Queen is the chief stockholder and President of Queen's Tree Surgery, Inc.;

3. Queen's Tree Surgery, Inc. had a contract with Nashville Electric Service to trim trees and brush from around electric poles and lines;

4. Trimming was done by a workman in a fiberglass bucket controlled by steel cables running from the bucket down to the truck;

5. The steel cables are manufactured with fiberglass insulators inserted in the cable to prevent the flow of electricity to the truck body should there be any contact with an electric wire;

6. Queen's Tree Surgery, Inc. had removed the fiberglass insulators resulting in an unimpeded path through which electricity could pass down to the truck body;

7. The assembly came in contact with a live wire and at least 4000 volts passed

down the cable to the truck body and plaintiff's decedent was electrocuted when he came in contact with the truck; and,

8. W. R. Queen as chief officer and major stockholder of Queen's Tree Surgery, Inc. was grossly, even criminally, negligent in furnishing that piece of equipment to the work crew.

Defendant's motion for dismissal of the suit against him was granted.

The sole assignment of error alleges the Trial Court erred in holding W. R. Queen could not be sued at common law for his gross or criminal negligence and that plaintiff's only available remedy was the Tennessee Workmen's Compensation Law.

The sole issue then is whether W. R. Queen is shielded from common law liability by T.C.A. § 50–908.

Stated in its narrowest terms and in comport with plaintiff's general line of argument, the issue is whether gross or criminal negligence is of such a character that it should be equivalent to intentional tortuous conduct and thus fall outside the scope of T.C.A. § 50–908.

50–908. Right to compensation exclusive. The rights and remedies herein granted to an employee subject to the Workmen's Compensation Law on account of personal injury or death by accident, including a minor whether lawfully or unlawfully employed, shall exclude all other rights and remedies of such employee, his personal representative, dependents, or next of kin, at common law or otherwise, on account of such injury or death. [Acts 1919, ch. 123, § 8; Shan.Supp., § 3608a157; Code 1932, § 6859; Acts 1961, ch. 184, § 2.]

Plaintiff cites *Williams v. Smith,* 222 Tenn. 284, 435 S.W.2d 808 (1968), and *Reed v. State,* 172 Tenn. 73, 110 S.W.2d 308 (1937), in support of his proposition that gross or criminal negligence is equivalent to an intentional tort.

In *Williams,* plaintiff, an employee saleslady for the defendant company was fired by a fellow employee, the store manager, who subsequently allegedly intentionally committed an assault and battery upon her. Two issues were raised on appeal:

(1) whether or not the Workmen's Compensation Act bars a common law action where an employer corporation acting through its employee alter ego intentionally commits an assault and battery upon an employee so as to restrict the assaulted employee's remedy exclusively to the Workmen's Compensation Act, and

(2) whether or not the Workmen's Compensation Act provides immunity to an employee who commits an intentional and malicious assault and battery upon a co-employee.

Our Supreme Court held that the Workmen's Compensation Act barred a common law action against the employer for injuries sustained as a result of an intentional tort committed by a co-employee but did not bar an action against the co-employee.

As the co-employee in *Williams* had committed an intentional tort by definition, the case is not authority for the proposition that gross negligence should be considered the equivalent of intentional tortuous conduct for purposes of liability outside the Workmen's Compensation Act.

In *Reed v. State, supra,* appellant had been convicted of voluntary manslaughter arising from an automobile accident. The appellant's negligence was deemed by the jury to constitute criminal negligence. The issue on appeal was whether appellant's acts were such as to be regarded as malum in se. In finding that appellant's acts were malum in se, the Court used the following language, which plaintiff at bar asserts is determinative of the issue he raises:

It was an act on a par with firing a gun into a crowded street, or dropping a heavy object into such a street from a tall building. *Id.* at 76, 110 S.W.2d at 309.

*Reed v. State* concerned the issue of the nature of the negligence that would support a conviction for voluntary manslaughter. That gross or criminal negligence may or may not be sufficient to substantiate a conviction of voluntary manslaughter in crimi-

nal law is not authority for plaintiff's proposition here.

The policy decisions of the criminal are distinctive from those of the civil law. In particular, this is true in light of the Legislature's intent to alter remedies under the civil law, as evidenced by the enactment of the Workmen's Compensation Act.

In *Brown Shoe Co. v. Reed,* 209 Tenn. 106, 350 S.W.2d 65 (1961), the term "accident" as used in the Workmen's Compensation Act was defined:

An accident is generally an unlooked for mishap, an untoward event, which is not expected or designed. Generally in most such cases this Court has repeatedly said that a compensable injury should be the result of something happening by accidental means though the act involving the accident was intentional. Accidental means ordinarily mean an effect which was not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing. It is produced by means which were neither designed nor calculated to cause it. It cannot be reasonably anticipated, it is unexpected, it is produced by unusual combinations of fortuitous circumstances and such an injury is an injury by accidental means. *Id.* at 114–15, 350 S.W.2d at 69.

▌ We are cited to none nor can we find any Tennessee authority on the issue of whether an allegation of an employer's conduct of gross or criminal negligence is equal to an allegation of intentional tortuous conduct for the purpose of avoiding the exclusive remedy of the Workmen's Compensation Act. However, in concert with authorities from other jurisdictions, we hold that it is not.

▌ It is evident that an intentional tort by the employer in person upon the employee will afford a ground for common law action for damages. *See e. g. Boek v. Wong Hing,* 180 Minn. 470, 231 N.W. 233 (1930).

The theoretical basis for that result is that the employer cannot allege an accident when he has intentionally committed the act. *See e. g. Le Pochat v. Pendleton,* 271 App.Div. 964, 68 N.Y.S.2d 594 (1946).

The employer in such a situation would have to affirmatively plead the exclusiveness of the act as a defense and cannot do so when he has deliberately produced the result. Thus, the person who must allege the accidental character of the injury, as a matter of pleading, cannot do so because of the intentional character of the act.

As is said in Larson, *Workmen's Compensation* (desk ed.), § 68.10,

Since the legal justification for the common law action is the non-accidental character of the injury from the defendant employer's standpoint, the common law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, willful, deliberate, intentional, wreckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury. *Id.* (citing *Wilkinson v. Archber,* 101 N.H. 7, 131 A.2d 51 (1957)).

As in *Duncan v. Perry Packing Co.,* 162 Kan. 79, 174 P.2d 78 (1946), plaintiff here is seeking to avoid the exclusiveness of the Workmen's Compensation Act by alleging facts in a negligence action against the employer. As in *Duncan,* even if we accept the allegations of gross or criminal negligence as true, it falls short of alleging actual intent to injure. There is a distinct difference in fact and law between gross or criminal negligence and actual intent to injure.

Our holding comports with analogous situations within the Workmen's Compensation Act's scope as litigated in foreign jurisdictions. *See e. g. Provo v. Bunker Hill Co.,* 393 F.Supp. 778 (D.C.Idaho 1975) (even knowingly permitting a hazardous work condition to exist was not an intentional act sufficient to give the employee a common law remedy against his employer.); *Finch v.*

*Swingly,* 42 A.D.2d 1035, 348 N.Y.S.2d 266 (1973) (no allegation that the employer intentionally caused the automobile hoist to fall upon the plaintiff. Plaintiff merely alleged an employer directed the employee to use the hoist at a time when he knew the hoist and safety device were defective. An allegation of wanton or willful negligence did not suffice.)

 Further, the dual capacity doctrine does not afford the plaintiff a common law remedy. Under this doctrine, an employer normally shielded by the exclusive remedy principle may become liable if he occupies an additional capacity, other than mere employer, that confers upon him obligations independent of those imposed as an employer.

Here, under the allegations as asserted by plaintiff, defendant employer only stood in relationship of employer to employee. There were no independent grounds of a sufficient second relationship alleged.

It results that the plaintiff's assignment of error is without merit. This cause is affirmed with costs to be paid by the plaintiff.

TODD and DROWOTA, JJ., concur.

ORDER ON PETITION TO REHEAR

LEWIS, Judge.

The plaintiff's able and forceful Petition to Rehear points out no new matters of fact or law overlooked by us in reaching our conclusion. The Petition only reargues matters which were fully considered by us.

The plaintiff also asked that he be allowed to amend his complaint in this Court or, in the alternative, this Court remand the cause to the Circuit Court so that he would have an opportunity to amend there.

This Court considers only such matters as were brought to the attention of the Trial Court and acted upon or permitted by the Trial Court. *Clement v. Nichols,* 186 Tenn. 235, 209 S.W.2d 23 (1948). Only in rare cases will an amendment be allowed in the appellate court. *Tennessee Cent. R. Co.*

*v. Brown,* 125 Tenn. 351, 143 S.W. 1129 (1911). This case in not one of those.

Further, even if the amendment were allowed, it does not add anything new to the complaint.

The Petition to Rehear is therefore respectfully denied at plaintiff's cost.

TODD and DROWOTA, JJ., concur.